

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Vimarie Santiago León; Ariel González Rivera<br><br>Recurridos<br><br>v.<br><br>Municipio de San Juan<br><br>Peticionario | Certiorari<br><br>2009 TSPR 153<br><br>177 DPR \_\_\_\_ |

Número del Caso: CC-2008-634

Fecha: 7 de octubre de 2009

Tribunal de Apelaciones:

      Región Judicial de San Juan-Panel III

Juez Ponente:
          Hon. José A. Morales Rodríguez

Abogados de la Parte Peticionaria:

          Lcdo. Simone Cataldi Malpica
          Lcdo. Eliezer A. Aldarondo López
          Lcdo. Eliezer Aldarondo Ortiz

Abogados de la Parte Recurrida:

          Lcdo. Jennifer López Negrón
          Lcdo. Julio Nigaglioni Arrache

Materia: Salarios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correccione s del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace c omo un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Vimarie Santiago León;
Ariel González Rivera

Recurridos

v                                    CC-2008-634

Municipio de San Juan

Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.


San Juan, Puerto Rico, a 7 de octubre de 2009.

Por medio del presente recurso de *certiorari* se nos solicita que revisemos una Sentencia emitida por el Tribunal de Apelaciones. En dicha sentencia el foro apelativo intermedio dispuso que, a pesar de concurrir todos los requisitos para aplicar interjurisdiccionalmente la doctrina de cosa juzgada, dicha aplicación, a modo de excepción, cede ante el alto interés público que revisten las reclamaciones instadas por los recurridos. Por entender que el foro intermedio apelativo erró al aplicar la excepción y no la norma, REVOCAMOS.

I

El 1 de agosto de 2001, la Sra. Vimarie Santiago León comenzó a trabajar como Supervisora de Sección en el programa Más Salud en tu Comunidad del Departamento de Salud del Municipio de San Juan, en adelante el Departamento. Dicho puesto era uno transitorio y estaba adscrito a la División de Programas Especiales.

El 26 de noviembre de 2001, la señora Santiago León fue designada Directora Auxiliar de Programas Especiales. Esta posición era una plaza regular que la señora Santiago León pasó a ocupar interinamente. Su jefe y supervisor inmediato lo era el Dr. Alfredo L. Escalera, quien dirigía el programa de salud del Departamento.

Posteriormente, en febrero del 2002, la señora Santiago León quedó embarazada. Luego de comunicarle este hecho al doctor Escalera, éste, alegadamente, inició un patrón de discrimen y de trato desigual en contra de la señora Santiago León por razón de su estado de gestación.

Debido a ello, el 4 de octubre de 2002, la señora Santiago León y el Sr. Ariel González Rivera, su compañero consensual, presentaron la demanda de autos en contra del Municipio de San Juan, en adelante el Municipio; el doctor Escalera, en su carácter oficial y personal, Fulana de Tal y la Sociedad Legal de Bienes Gananciales por ellos compuesta; y la Compañía de Seguros ABC.[1] En síntesis, los demandantes alegaron que la conducta de los demandados

_____

[1] *Véase* Apéndice, págs. 5-8.

quebrantaba la Sección 1 del Artículo II de la Constitución de Puerto Rico;[2] la Ley Núm. 3 de 13 de marzo de 1942, conocida como la Ley de Protección de Madres Obreras;[3] la Ley Núm. 69 del 6 de julio de 1985, conocida como la Ley de Discrimen en el Empleo por Razón de Sexo;[4] y la Ley Núm. 17 del 22 de abril de 1988, conocida como la Ley en Contra del Hostigamiento Sexual en el Empleo.[5] Además, los demandantes alegaron daños y perjuicios causados al amparo del Artículo 1802 del Código Civil.[6]

Luego de varios trámites procesales, el 30 de enero de 2004, la señora Santiago León y el señor González Rivera presentaron otra demanda fundada en los mismos hechos, esta vez en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, en adelante Tribunal de Distrito.[7] Esta segunda demanda también estuvo dirigida en contra del Municipio; el doctor Escalera, en su carácter oficial y personal, Fulana de Tal y la Sociedad Legal de Bienes Gananciales por ellos compuesta; y la Compañía de Seguros ABC.

Sin embargo, a pesar que en esta segunda demanda también se hicieron las mismas reclamaciones que en la

---

[2] Art. II § 1 Const. E.L.A., L.P.R.A., Tomo 1, ed. 2000, pág. 55.

[3] 29 L.P.R.A. § 467 *et seq*.

[4] 29 L.P.R.A. § 1321 *et seq.*

[5] 29 L.P.R.A. § 155 *et seq.*

[6] 31 L.P.R.A. § 5141.

[7] *Véase* Apéndice, págs. 21-28.

demanda de autos, dichas reclamaciones estuvieron basadas en otras disposiciones legales; la Constitución de los Estados Unidos de América;[8] el Título VII de la Ley de Derechos Civiles de 1964;[9] el "Pregnancy Discrimination Act";[10] el "Family and Medical Leave Act";[11] la Ley Núm. 81 del 30 de agosto de 1991, conocida como la Ley de Municipios Autónomos;[12] la Ley Núm. 100 del 30 de junio de 1959, conocida como la Ley en Contra del Discrimen en el Empleo;[13] la Ley Núm. 69 del 6 de julio de 1985, *supra*;[14] y el Artículo 1802 del Código Civil.[15]

El 8 de agosto de 2006, luego de haber resuelto la mayoría de las controversias presentadas y de que los demandantes desistieran voluntariamente de su reclamación bajo el "Family and Medical Leave Act",[16] el Tribunal de Distrito desestimó con perjuicio las reclamaciones que permanecían ante su consideración.[17] Esto, debido a que los

---

[8] U.S.C. Const. Art. III § 2, cl.1.

[9] 42 U.S.C. § 2000e *et seq.*

[10] 42 U.S.C. § 2000e(k).

[11] 29 U.S.C. §§ 2601-2619.

[12] 21 L.P.R.A. § 4001 *et seq.*

[13] 29 L.P.R.A. § 146 *et seq.*

[14] 29 L.P.R.A. § 1321 *et seq.*

[15] 31 L.P.R.A. § 5141.

[16] *Véase* Apéndice, págs. 29-31.

[17] *Véase* Apéndice, págs. 141-144. El 13 de marzo de 2006, el Tribunal de Distrito desestimó con perjuicio todas las reclamaciones instadas en contra del doctor Escalera, su

demandantes optaron por asumir una conducta negligente y no cumplieron con las múltiples órdenes que había dictado el Tribunal de Distrito en cuanto al manejo diligente del caso, el descubrimiento de prueba y la radicación en tiempo de los escritos.

Una vez la sentencia emitida por el Tribunal de Distrito advino final y firme,[18] el 11 de mayo de 2007, el Municipio presentó una moción de desestimación en el Tribunal de Primera Instancia.[19] En dicha moción el Municipio alegó que la sentencia emitida por el Tribunal de Distrito constituía cosa juzgada, por lo que solicitó que se desestimaran las reclamaciones pendientes en su contra.[20]

Luego de escuchar a ambas partes, el 25 de septiembre de 2007, el Tribunal de Primera Instancia dictó una sentencia parcial en la cual se negó a aplicar interjurisdiccionalmente la doctrina de cosa juzgada a las reclamaciones amparadas en la Sección 1 del Artículo II de la Constitución de Puerto Rico, la Ley de Discrimen en el

---

esposa y la Sociedad Legal de Bienes Gananciales por ellos compuesta. *Véase* Apéndice, págs. 123-133.

[18] Esta sentencia desestimatoria advino final y firme luego que transcurriera el término de 30 días para presentar el "Notice of Appeal", según lo establecido en la Regla 4(a)(1)(A) de Procedimiento Apelativo federal. Dicho término comenzó a transcurrir el 12 de marzo de 2007, cuando el Tribunal de Distrito emitió una opinión y orden en la cual denegó la moción de reconsideración presentada por los demandantes.

[19] *Véase* Apéndice, págs. 13-20.

[20] Ya para esta fecha el Tribunal de Primera Instancia había desestimado todas las reclamaciones en contra del doctor Escalera, su esposa y la Sociedad Legal de Bienes Gananciales por ellos compuesta. *Véase* Apéndice, pág. 126.

Empleo por Razón de Sexo, y la Ley en Contra del Hostigamiento Sexual en el Empleo.[21] El Tribunal de Primera Instancia indicó que, a pesar de estar convencido que entre ambos casos existía la más perfecta identidad de cosas, causas y partes, dichas reclamaciones estaban revestidas de un alto interés público, por lo que debían ventilarse en sus méritos. No obstante, el foro primario desestimó la reclamación bajo el Artículo 1802 del Código Civil.[22]

Inconforme, el 30 de noviembre de 2007, el Municipio presentó un recurso de apelación ante el Tribunal de Apelaciones.[23] En su recurso, el Municipio argumentó que, en virtud de la Regla 41(b) de Procedimiento Civil federal,[24] la sentencia emitida por el Tribunal de Distrito constituía una adjudicación en los méritos, por lo que el Tribunal de Primera Instancia debió haber aplicado interjurisdiccionalmente la doctrina de cosa juzgada a todas las reclamaciones presentadas por los demandantes.

Luego de varios trámites procesales, el 23 de mayo de 2008, el Tribunal de Apelaciones dictó sentencia

---

[21] *Véase* Apéndice, págs. 148-160. Esta sentencia fue notificada el 16 de octubre de 2007.

[22] 31 L.P.R.A. § 5141.

[23] *Véase* Apéndice, págs. 171-191. El término para presentar el recurso de apelación quedó debidamente interrumpido por la moción de reconsideración que presentó el Municipio el 23 de octubre de 2007. *Véase* Apéndice, págs. 161-169. Dicha moción de reconsideración fue declarada SIN LUGAR mediante Orden de 26 de octubre de 2007, notificada el 30 de octubre de 2007. *Véase* Apéndice, pág. 170.

[24] Fed. R. Civ. P. 41(b).

confirmando al Tribunal de Primera Instancia.[25] Como consecuencia de este dictamen desfavorable, el Municipio acudió ante este Tribunal mediante recurso de *certiorari*. En dicho recurso el Municipio alegó la comisión del siguiente error:

> **Erró el Tribunal de Apelaciones al confirmar la sentencia del Tribunal de Instancia denegando la desestimación en su totalidad del pleito, a pesar de ser de aplicación la doctrina de cosa juzgada.**

II

Nos encontramos ante un caso en el que se invoca la aplicación interjurisdiccional de la doctrina de cosa juzgada. Tal aplicación puede ocurrir cuando se presenta ante el Tribunal de Primera Instancia una sentencia federal final y firme, como también puede ocurrir cuando se presenta ante el Tribunal de Distrito una sentencia final y firme emitida por un Tribunal local.[26]

Cuando la doctrina de cosa juzgada ha de aplicarse interjurisdiccionalmente, las normas jurídicas que determinan el efecto de la sentencia federal (*claim preclusive effect*) varían. Estas dependerán del fundamento invocado para sustentar la jurisdicción federal. Así, si el fundamento invocado por el demandante para sustentar la jurisdicción del Tribunal de Distrito lo fue la diversidad

---

[25] *Véase* Apéndice, págs. 223-237.

[26] 18 Moore´s Federal Practice, § 133-1 (Mathew Bender 3d ed.) *Véase además* Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212 (1992); Díaz Maldonado v. Lacot, 123 D.P.R. 261 (1989); Ramos González v. Felix Medina, 121 D.P.R. 312 (1988).

de ciudadanía,[27] el efecto de cosa juzgada que tendrá la decisión federal será determinado por las normas que el foro local aplica en sus dictámenes.[28]

En cambio, cuando el fundamento invocado por el demandante para sustentar la jurisdicción del Tribunal de Distrito es que el pleito incoado presenta una cuestión federal,[29] el efecto de cosa juzgada que tendrá la decisión federal será determinado por las normas pautadas por el Tribunal Supremo de Estados Unidos. Ello, para preservar la supremacía y la finalidad de la decisión inicial basada en las leyes del foro que la dictó.[30]

---

[27] 28 U.S.C.A. § 1332.

[28] A esos efectos, en Semtek International, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-508 (2001), el Tribunal Supremo federal indicó lo siguiente: "Since state, rather than federal, substantive law is at issue there is no need for a uniform federal rule. And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court. This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits".

[29] 28 U.S.C.A. § 1331.

[30] A esos efectos, en Semtek International, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507 (2001), el Tribunal Supremo federal indicó lo siguiente: "It is also true, however, that no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case, yet we have long held that States cannot give those judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes". *Véase además* Ramos González v. Felix Medina, 121 D.P.R. 312, 327 (1988) (*citando* a Stoll v. Gottlieb, 305 U.S. 165, 170-171 (1938); Depostit Bank v. Frankfort, 191 U.S. 499, 517-520 (1903)).

En el caso de autos, los demandantes instaron su reclamación en el Tribunal de Distrito amparados en distintos estatutos federales y no en diversidad de ciudadanía. Como consecuencia de ello, el efecto de la sentencia desestimatoria emitida por el Tribunal de Distrito debe ser evaluado bajo las normas federales de *res judicata*.[31]

La doctrina federal de cosa juzgada está cimentada sobre el interés en preservar la finalidad, efectividad y certidumbre de las sentencias.[32] Tal doctrina federal "no es una mera herramienta procesal heredada de tiempos técnico-procesales. Es una doctrina fundamental de justicia sustancial, de política pública y de paz privada que debe ser invocada y reforzada por los tribunales".[33]

Como norma general, la referida doctrina federal sostiene que toda sentencia final emitida por un Tribunal competente que adjudique los méritos de las reclamaciones presentadas, impide que las mismas partes relitiguen entre sí las mismas causas de acción ya adjudicadas.[34]

---

[31] Ramos González v. Félix Medina, 121 D.P.R. 312, 328 (1988).

[32] Ramos González v. Félix Medina, 121 D.P.R. 312, 339 (1988).

[33] Federated Department Stores, Inc. V. Moitie, 452 U.S. 394, 401 (1981). (Traducción nuestra).

[34] Federated Department Stores, Inc. V. Moitie, 452 U.S. 394, 398 (1981) (*citando a* Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); Cromwell v. County of Sac., 94 U.S. 351, 352-353 (1877)). *Véase además* Powell v. Infinity Ins. Co., 922 A.2d 1073 (2007).

Para que la doctrina federal de cosa juzgada pueda invocarse exitosamente tienen que concurrir los requisitos siguientes: (1) identidad de partes; (2) identidad de causas de acción; y (3) una sentencia final adjudicando los méritos de las mismas controversias.[35] **Una vez concurren los referidos requisitos, si las causas de acción adjudicadas son reclamadas nuevamente, la sentencia emitida impide que se relitiguen, entre las mismas partes, las causas de acción adjudicadas o las que pudieron haberse adjudicado si se hubiesen reclamado.[36]**

En cuanto al primer requisito, hay identidad de partes cuando las personas involucradas en ambos pleitos son las mismas, independientemente del rol asumido en ambos litigios. En otras palabras, hay identidad de partes aun cuando el demandante en el primer pleito es el demandado en el segundo o viceversa.[37]

En cuanto a la identidad de causas de acción, este requisito es similar al concepto de causa o razón de pedir comprendido en nuestra doctrina de cosa juzgada.[38]    El

---

[35] Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 296 F.3d 624, 628 (7mo Cir. 2002).

[36] Powell v. Infinity Ins. Co., 922 A.2d 1073 (2007).

[37] *Véase* Headley v. Bacon, 828 F.2d 1272 (8vo Cir. 1987); Towers, Perrin, Forster & Crosby, Inc. v. Brown, 732 F.2d 345 (3er Cir. 1984).

[38] Ramos González v. Félix Medina, 121 D.P.R. 312, 331 (1988) (*citando a* A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 765 (1981); Lausell Marxuach v. Díaz de Yañez, 103 D.P.R. 533, 536 (1972); Colón v. San Patricio Corporation, 81 D.P.R. 242, 271 (1959)).

referido requisito comprende todos los derechos del demandante que dieron pie a la reclamación instada en contra del demandado. Poco importa si ambos pleitos se originan bajo leyes diferentes, pues el mismo derecho puede ser protegido por más de una disposición legal. Lo importante es que la causa o razón para reclamar de ambos pleitos surja de un núcleo común de hechos operacionales, que sea una repetición fáctica o que surja de una misma conducta, transacción u ocurrencia.[39]

En cuanto al tercer requisito, sentencia final que adjudique los méritos de las reclamaciones presentadas, la Regla 41(b) de Procedimiento Civil federal regula el alcance que tienen las sentencias desestimatorias emitidas por el Tribunal de Distrito. En lo pertinente, la referida Regla indica lo siguiente:

> (b) Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule –except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19– operates as an adjudication on the merits.[40]

Una sentencia desestimatoria bajo la Regla 41(b) de Procedimiento Civil federal, *supra*, opera como una adjudicación en los méritos. Esto, a menos que el Tribunal de Distrito disponga lo contrario o que la desestimación

---

[39] Ramos González v. Félix Medina, 121 D.P.R. 312, 331 (1988). (Citas omitidas).

[40] Fed. R. Civ. P. 41(b).

haya sido decretada por cualquiera de los fundamentos siguientes: falta de jurisdicción; competencia territorial inadecuada; y dejar de acumular una parte bajo la Regla 19 de Procedimiento Civil federal.[41]

Cuando la sentencia desestimatoria dictada por el Tribunal de Distrito estuvo motivada por el fracaso del demandante en litigar diligentemente sus reclamaciones (*failure to prosecute*) o en su continua desobediencia con las órdenes o reglas del tribunal, tal sentencia también constituye una adjudicación en los méritos.[42]

**No obstante lo expresado, hay contadas ocasiones en donde la doctrina federal de cosa juzgada no debe ser aplicada. Esto, a pesar de concurrir todos los requisitos para ello. Cuando la aplicación de la referida doctrina afecta un interés público o causa una gran injusticia, el Tribunal Supremo de Estados Unidos ha optado por hacer un balance de intereses y ponderar entre los fines de la**

---

[41] Fed. R. Civ. P. 19. *Véase además* <u>Ramos González v. Félix Medina</u>, 121 D.P.R. 312, 321 (1988). (Citas omitidas).

[42] A esos efectos, los profesores Charles Alan Wright, Arthur R. Miller y Edward H. Cooper han señalado lo siguiente: "Penalty dismissals provide a category in which there is little need to venture beyond Civil Rule 41(b) in search of preclusion answers. Rule 41(b) provides that unless the court in its order for dismissal otherwise provides, dismissals for failure to prosecute, to comply with the civil rules, or to comply with any other order of the court operate as an adjudication upon the merits". *Véase* 18A <u>Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d</u>, § 4440 (2002).

**doctrina y el daño que se causaría al aplicarla, si alguno,**

**a las circunstancias particulares del caso.**[43]

III

Nos encontramos ante un cuadró fáctico en el que concurren todos los requisitos para aplicar interjurisdiccionalmente la doctrina federal de cosa juzgada. En cuanto a la identidad de partes requerida, basta con notar que en ambos casos comparecen como demandantes Vimarie Santiago León y Ariel González Rivera, y como demandados el Municipio; el doctor Escalera, en su carácter oficial y personal, Fulana de Tal y la Sociedad Legal de Bienes Gananciales por ellos compuesta; y la Compañía de Seguros ABC. Como resultado de ello, se configura entre ambos pleitos la identidad de partes requerida.

De igual manera, en el caso de autos concurre el requisito de identidad de causas de acción. Ambas reclamaciones plantean el mismo asunto, surgen del mismo núcleo común de hechos operacionales e involucran el quebrantamiento de los mismos derechos, aunque bajo estatutos legales distintos.[44] Más aún, de una lectura de ambas demandas se desprende que la instada en el foro federal no es mas que una traducción al inglés de la

---

[43] Mericoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661 (1944); Federated Department Stores, Inc. V. Moitie, 452 U.S. 394 (1981). *Véase además* Robertson v. Interstate Securities Co., 435 F.2d 784 (8vo Cir. 1971).

[44] *Véase* Rein v. Providian Financial Corp., 270 F.3d 895, 903 (9no Cir. 2001).

presentada en el foro local. Siendo ello así, entendemos que también se configura entre ambos pleitos la identidad de causas de acción requerida.

En cuanto al tercer requisito, sentencia final adjudicando los méritos de las reclamaciones, el 8 de agosto de 2006, el Tribunal de Distrito desestimó con perjuicio el resto de las reclamaciones presentadas por los demandantes que quedaban ante su consideración. Esto, debido a que la parte demandante incumplió constantemente con las órdenes del Tribunal de Distrito y demostró un comportamiento altamente negligente en el manejo de sus reclamaciones. Tal sentencia desestimatoria advino final y firme luego de transcurrido el término de 30 días para presentar el "Notice of Appeal", según establecido en la Regla 4(a)(1)(A) de Procedimiento Apelativo federal.[45]

Por ello, y en virtud del alcance que le han otorgado los tribunales federales a las sentencias desestimatorias dictadas al amparo de la referida la Regla 41(b),[46] nos resulta forzoso concluir que la sentencia desestimatoria dictada por el Tribunal de Distrito es válida, final y constituye una adjudicación en los méritos.

---

[45] Fed. R. Ap. P. 4(a)(1)(A).

[46] Semtek International, Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1121-1122 (1er Cir. 1989); Nasser v. Isthmian Lines, 331 F.2d 124, 128 (2do Cir. 1964); Kearns v. General Motors Corp., 94 F.3d 1553, 1555 (Cir. Fed. 1996); Horwitz v. Alloy Automotive Co., 992 F.2d 100, 104 (7mo Cir. 1993); Nagle v. Lee, 807 F.2d 435, 442-443 (5to Cir. 1987).

Finalmente, en cuanto a la excepción de la doctrina federal de cosa juzgada, el Municipio peticionario aduce que el Tribunal de Apelaciones erró al no aplicarla interjurisdiccionalmente. Le asiste la razón. Veamos.

En Puerto Rico las reclamaciones de discrimen por condición de género, incluyendo aquel que se genera a raíz de la condición de embarazo, están revestidas de un alto interés público. Además, existe una clara política pública de condenar tales acciones discriminatorias.[47]

**No obstante, cuando una persona pretende vindicar sus derechos mediante la presentación paralela de reclamaciones en distintos tribunales de jurisdicción concurrente, el trámite y manejo de sus causas de acción requiere un grado mayor de diligencia, cumplimiento y peritaje. Así, si un demandante fracasa en tramitar diligentemente sus causas de acción, éste se expone a que sus reclamaciones sean desestimadas. Después de todo, existe también un alto interés público en que los pleitos tengan fin y no adquieran vida eterna en los tribunales.[48]**

En el caso ante nos, del recurso que obra en el Tribunal se desprende que la parte demandante, no sólo incumplió con múltiples órdenes del foro local, sino que también asumió una conducta desinteresada en el manejo de

---

[47] 29 L.P.R.A. § 1321.

[48] Federated Department Stores, Inc. V. Moitie, 452 U.S. 394, 401 (1981). *Véase además*, Blas v. Hospital Guadalupe, 167 D.P.R. 439, 446 (2006); Parrilla v. Rodríguez, 163 D.P.R. 263, 274 (2004); Bonafont Solis v. American Eagle, 143 D.P.R. 374, 382-383 (1997).

sus reclamaciones ante el Tribunal de Distrito.[49]  Debido a ello, no vemos injusticia alguna en aplicar interjurisdiccionalmente la doctrina de cosa juzgada.  La manera en que concluyó el pleito en el foro federal fue el producto de los propios actos de la demandante.  A estos efectos, ya hace más de medio siglo que el Tribunal Supremo federal se ha pronunciado al respecto:

> The predicament in which respondent finds himself is of his own making…. [W]e cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata*, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation –a maxim which comports with common sense as well as public policy.  And the mischief which would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship.[50]

Resolver lo contrario eximiría a una parte de cumplir con las normas y reglas procesales establecidas por los distintos ordenamientos jurídicos por el mero hecho de reclamar causas de acción revestidas de alto interés público.  Precisamente, el propio hecho de reclamar una causa de acción revestida de alto interés público implica que la parte reclamante tiene que observar un grado mayor de diligencia.

IV

Por los fundamentos antes expuestos, *resolvemos que las circunstancias particulares de este caso no justifican*

---

[49] *Véase* Apéndice, págs. 45-52, 238-247.

[50] Reed v. Allen, 286 U.S. 191, 198-199 (1932).

que se exima a la parte demandante de la aplicación interjurisdiccional de la doctrina federal sobre cosa juzgada. Revocamos las sentencias dictadas por el Tribunal de Apelaciones y por el Tribunal de Primera Instancia, y desestimamos con perjuicio la demanda de autos.

Se dictará sentencia de conformidad.


Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Vimarie Santiago León;
Ariel González Rivera

      Recurridos

         v.

Municipio de San Juan

      Peticionarios

CC-2008-634

SENTENCIA

San Juan, Puerto Rico, a 7 de octubre de 2009.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que las circunstancias particulares de este caso no justifican que se exima a la parte demandante de la aplicación interjurisdiccional de la doctrina federal sobre cosa juzgada. Revocamos las sentencias dictadas por el Tribunal de Apelaciones y por el Tribunal de Primera Instancia, y desestimamos con perjuicio la demanda de autos.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Jueza Asociada señora Fiol Matta disiente con opinión escrita.

Juliana Mosquera Soler
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Vimarie Santiago León;
Ariel González Rivera
         Recurridos

                                        *Certiorari*

                                  CC-2008-634

         v.


Municipio de San Juan
       Peticionario




Opinión Disidente emitida por la Jueza Asociada señora Fiol Matta




En San Juan, Puerto Rico, a 7 de octubre de 2009.

Disiento de la conclusión a la que llega la mayoría de este Tribunal porque entiendo que nuestra jurisprudencia claramente ha establecido que la aplicación interjurisdiccional de la doctrina de cosa juzgada a una sentencia emitida en los méritos por el foro federal, no es automática ni absoluta. Por esto, se han creado excepciones que posibilitan el que en ocasiones se pueda descartar la finalidad de una sentencia. Específicamente, se puede eximir a una parte de los efectos de la figura jurídica de cosa juzgada

cuando su aplicación puede causar una injusticia o se afecta un interés público.[51]

Sin duda, el propósito de la doctrina de cosa juzgada es importante porque permite darle finalidad, efectividad y certidumbre a las determinaciones emitidas por el foro judicial. No obstante, este interés procesal no puede estar por encima de un derecho de índole constitucional, como lo es el no ser discriminado por razón de sexo.[52] Tan substancial es esta prohibición de discriminación por sexo que nuestra Asamblea Legislativa la ha hecho extensiva al ámbito obrero patronal, mediante abundante legislación dirigida a erradicar este tipo de discrimen.

La determinación que hoy emite este tribunal pretende establecer que la aplicación interjurisdiccional de la doctrina de cosa juzgada es de mayor trascendencia que la prohibición de discriminar por razón de sexo, el cual es un interés y fin público de la más alta jerarquía. Difiero totalmente de tal apreciación, mucho más cuando previamente optamos por no aplicar la figura de cosa juzgada en un caso en el cual lo que estaba en entredicho era la imagen de la judicatura. En esa ocasión, específicamente resolvimos que:

> …el interés público en mantener nuestro sistema de justicia libre de cualquier apariencia de parcialidad, aunque ésta sea infundada, sobrepasa el interés de mantener la finalidad y eficacia de las sentencias de otras jurisdicciones, sobre todo cuando consideramos que la sentencia dictada en el presente caso fue una de desestimación por

---

[51] Ramos González v. Felix Medina, 121 D.P.R. 312, 340 (1988).

[52] Art. II, Const. E.L.A., 1 L.P.R.A. sec.1.

inacción y no una emitida después de un juicio plenario…[53]

Si el interés público en mantener la apariencia de imparcialidad de la judicatura posibilitó el que se activara la excepción a la norma jurídica de cosa juzgada, con más justificación debe aplicarse ésta ante un interés de orden constitucional, como lo es el derecho a la dignidad e igualdad humana. Al no procederse de esta manera, considero que el Tribunal de Apelaciones actuó correctamente al resolver que no debía desestimarse la demanda bajo la doctrina de cosa juzgada.

Liana Fiol Matta
Jueza Asociada

---

[53] Ramos González v. Félix Medina, *supra*, págs. 341–342.